**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

GRACE CHRISTIAN FELLOWSHIP,

    Plaintiff,

    v.                                    Case No. 07-C-0348

KJG INVESTMENTS INC. and
COLONY INSURANCE COMPANY,

    Defendants.

---

## **DECISION AND ORDER**

---

Plaintiff Grace Christian Fellowship (Grace) filed this action against KJG Investments, Inc. (KJG) and Colony Insurance Co. (Colony) under the citizen suit provision of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972. The plaintiff also asserts state law claims of continuing trespass, nuisance, and negligence.

On September 20, 2007, the plaintiff filed a motion for a preliminary injunction. The court held hearings on the motion on November 15, 2007, November 27, 2007, January 23, 2008, January 31, 2008, February 1, 2008 and April 9, 2008. On January 21, 2008, the plaintiff moved to add PSK Investments, LLC, as a defendant in this case. (Docket # 61). On April 7, 2008, the plaintiff filed a motion seeking the court's permission to offer testimony from three rebuttal witnesses. (Docket # 76). This motion was filed before the defendants' experts completed their testimony at the April 9, 2008, hearing. Defendant KJG opposes the plaintiff's motions.

**Plaintiff's Motion to Add Defendant**

In its memorandum filed on May 8, 2008, addressing the scope of injunctive relief, the plaintiff stated that it is willing to hold in abeyance its request to add PSK Investments as a defendant until such time as the court resolves its motion for a preliminary injunction. See Plaintiff's Memorandum of Law Regarding Scope of Injunctive Order and Amendment of Complaint to Add PSK Investments, LLC at 14. In light of the plaintiff's position, the court will deny without prejudice the plaintiff's motion to add PSK Investments as a defendant. The plaintiff may renew the motion at its discretion simply by advising the court and the defendants in writing that it wants to do so. Since briefing on the motion has been completed by the parties, no further briefing is necessary.

**Rebuttal Evidence**

A district judge "enjoys broad latitude in deciding what is proper rebuttal evidence." Kaczmarek v. Allied Chemical Corp., 836 F.2d 1055, 1062 (7th Cir. 1987). "The purpose of rebuttal testimony is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." United States v. Groves, 470 F.3d 311, 328 (7th Cir. 2006); United States v. Grintjes, 237 F.3d 876, 879 (7th Cir. 2001). Rebuttal testimony is not a means for a party to reemphasize its arguments, nor is it an opportunity for the plaintiff to correct any oversights in its case-in-chief. See Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3rd Cir. 1984). "It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." Id. However, the fact that evidence could have been

- 2 -

Case 2:07-cv-00348-PJG   Filed 06/12/08   Page 2 of 11   Document 92

addressed in the plaintiff's case-in-chief does not necessarily preclude its admission in rebuttal.  See Benedict v. United States, 822 F.2d 1426, 1428 (6th Cir. 1987).

In its initial memorandum regarding rebuttal witnesses, the plaintiff states that it wants to offer the testimony of James Drought concerning: 1) the February 11, 2008, groundwater test results from the excavation sump and MW-1 located adjacent to Grace's west exterior wall to rebut the testimony of defendants' expert, Dr. Raghu Singh; 2) the February 12, 2008, sub-slab samples of the soil gas vapors below the plaintiff's basement floor and one indoor air sample by SUMMA canister to rebut Robert Tuomanen's testimony that there is a "disconnect" between what is under the floor and in the basement air; and 3) the March 1- 2, 2008, indoor air sample taken in the plaintiff's basement by use of a SUMMA canister throughout a 24-hour period to rebut the testimony of Dr. Singh and Mr. Toumanen.

The plaintiff also proposes to offer the testimony of Dr. Theodore Hogan regarding 1) the "significance of the indoor air sampling" conducted in the plaintiff's basement on March 1-2, 2008; 2) the SUMMA canister room air sample collected on March 1- 2, 2008, to rebut Mr. Toumanen's testimony regarding volatile organic compound (VOC) levels in the basement air; and 3) Exhibits 23 and 37.  According to the plaintiff, these exhibits were previously marked, but the court reserved ruling on them.

Finally, the plaintiff wants to offer the testimony of Keith Hitzke: 1) to identify the North Shore Environmental Construction (NSEC) report, which the plaintiff states Mr. Hitzke authored and which was previously marked as Exhibit 17, although ruling on its admissibility was reserved; 2) that he was present during the emergency evacuation at the Grace property and personally witnessed the presence of free product in the church's basement footings and also oozing out from underneath the church; and 3) that he witnessed the removal of six

barrels of gas and water from under the church in April 2006. The plaintiff maintains that this proposed evidence rebuts Dr. Singh's testimony regarding the absence of free product.

In its reply memorandum, the plaintiff states that it will not be offering "new" test results, that is, test results post-dating the testimony of KJG's witnesses. Specifically, the plaintiff states that "despite the importance of prospective testimony to Grace's case, Grace will acquiesce to the court's desire that Grace's 'new' test results (post-dating the testimony of KJG's witnesses) should not be the subject of testimony by Grace's three rebuttal witnesses." (Reply Memorandum of Law Regarding Plaintiff's Proposed Rebuttal Witnesses [Plaintiff's Reply] at 1-2). The plaintiff also provides a chart comparing testimony of KJG's witnesses with proposed rebuttal testimony. Such chart was not included with the plaintiff's original motion. The chart lists additional proposed testimony to rebut testimony presented by Raymond Tierney at the April 9, 2008, hearing.

The plaintiff further asserts that the court can address the admissibility of Exhibits 23 and 37 without additional evidence. Regarding Exhibit 23, the plaintiff contends in its reply brief (contrary to its position in its initial brief) that the exhibit was received by the court, citing the November 27, 2007, Transcript at 237. The plaintiff also seeks the admission of Exhibit 37, the Agency for Toxic Substances & Disease Registry (ATSDR) report regarding a Health Consultation about chemical vapors at a public school in Milwaukee. The plaintiff states that Dr. Hogan's expert report references the exhibit as a reliance document and that the court should receive Exhibit 37 "for one of the same reasons it already received Exhibit 23: "it was '[r]eviewed by the expert'." (Plaintiff's Reply at 6).

In opposing the plaintiff's motion, defendant KJG maintains that the rebuttal testimony offered by the plaintiff does not rebut evidence, but instead is an attempt to introduce an

- 4 -

entirely new theory of the case with new evidence. It also asserts that the new evidence is not responsive to specific testimony given by Mr. Tuomanen or any of the defendants' experts. Defendant KJG specifically challenges the new tests set forth in plaintiff's proposed Exhibits, 45, 46 and 47, which it asserts were completed after Mr. Tuomanen finished his testimony.

Defendant KJG asserts that the plaintiff's chart should be disregarded as it was not provided with the plaintiff's original motion. Alternatively, defendant KJG asserts that the items in the chart break down into three categories (1) new evidence gathered or discovered by Grace after KJG's witnesses testified; (2) testimony that is cumulative of testimony already given; and (3) testimony that could have been presented in the plaintiff's case-in-chief. Defendant KJG also asserts that none of the plaintiff's requested rebuttal evidence responds to any of the evidence defendant KJG presented. With respect to Exhibit 37, defendant KJG points out that the plaintiff unsuccessfully attempted to introduce it into evidence during the cross-examination of Mr. Tuomanen. See January 31, 2008, Transcript at 447-455. Defendant KJG asserts that this is not rebuttal testimony, but merely an attempt to introduce an exhibit that was not previously admitted. It contends that rebuttal is not the time to correct mistakes made in a party's case-in-chief.

The court notes that, with limited exceptions, the plaintiff provides a brief summary of the testimony of the defendants' experts that it seeks to rebut, but does not provide any citation to the defendants' expert's testimony. Therefore, absent a review of the particular witness's entire testimony, the court cannot determine at this juncture whether the proposed testimony is, in fact, rebuttal testimony.

Similarly, defendant KJG's contends that evidence the plaintiff seeks to present in rebuttal is cumulative. However, defendant KJG does not specify what testimony it claims is

- 5 -

cumulative or cite to evidence in the record to support such contention. Without perusing all the hearing testimony, the court cannot ascertain what proposed rebuttal evidence, if any, is cumulative to evidence in the hearing record. As to the submissions of both parties, it is not the responsibility of the court to scour the record to determine whether the proposed evidence is cumulative and/or proper rebuttal testimony. Rawoof v. Texor Petroleum Co., Inc., 521 F.3d 750, 758 (7th Cir. 2008); Ruffin-Thompkins v. Experian Information Solutions, Inc., 422 F.3d 603, 610 (7th Cir. 2005).

With respect to Exhibit 23, although the defendants objected to its admission on hearsay grounds, the exhibit was received by the court. See November 27, 2007, Transcript at 235-237. Therefore, the plaintiff's initial request to have Exhibit 23 admitted is moot.

As for Exhibit 37, counsel questioned Dr. Hogan as to whether any of the items on his reliance list were peer reviewed studies about the impact of odors on people. Dr. Hogan replied: "Yes, there are. Except for the articles that are from newspapers, and from the State of Wisconsin, and those kind of Government documents, including the A.T.S.D.R. document, the other ones are from peer reviewed journal articles." November 27, 2007, Transcript at 187. The plaintiff attempted to introduce Exhibit 37, not through Dr. Hogan, but through the defendants' expert, Mr. Toumamen. The defendants objected on hearsay, lack of foundation and relevance grounds and the court reserved ruling on the exhibit.

Based on Mr. Toumamen's testimony, there was no indication that he had ever seen Exhibit 37, even though he was familiar with ATSDR and had relied on certain other ATSDR documents. Although Exhibit 37 was reviewed by Dr. Hogan, unlike Exhibit 23, it was not prepared by him. Dr. Hogan acknowledged that the report was not peer reviewed. Furthermore, the exhibit involves an evaluation of petroleum vapors entering one particular

- 6 -

site, a Milwaukee public school, in February 2001, almost five years before the event at the plaintiff's school in 2006. Under the circumstances, any relevance of this evidence to this case is questionable. Accordingly, based on the foregoing, Exhibit 37 will not be received.

The plaintiff also asserts that the court reserved ruling on Exhibit 17, the North Shore Environmental Construction Remedial Action Report for Grace Christian Fellowship. The exhibit was identified during the testimony of Mr. Drought. He testified that he reviewed the report in preparation for drafting his report and discussed it at length during the hearing. At the subsequent hearing on November 27, 2008, plaintiff's counsel offered several exhibits, including Exhibit 17. See November 21, 2008, Transcript at 65; November 27, 2008, Transcript at 136. Because defendant KJG's counsel stated that he needed to review the exhibits, the court deferred ruling on their admissibility. As far as can be determined, this matter issue was not raised again by the parties. Defendants' counsel will be given an opportunity to state their position with respect to the admission of this Exhibit 17.

Upon careful review, the court concludes that Mr. Hitzke can testify on rebuttal as to the presence of free product in the emergency excavation at the plaintiff's site after the 2006 spill. Such testimony could properly rebut the testimony of Dr. Singh that no free product was removed. Additionally, Mr. Drought can testify in rebuttal with respect to Mr. Tierney's testimony that the City often resists permitting investigation in utility trenches, and, to the extent such testimony is not cumulative, that gravel was appropriate backfill material.[1] The plaintiff seeks to have "Mr. Drought and Dr. Hogan" testify about the unreliability of dosimeter badge readings. See Plaintiff's Reply Brief at 3-4. Either Mr. Drought or Dr. Hogan can testify

---

[1] Mr. Drought testified about the problem with using sand and gravel as backfill rather than clay during his direct testimony. See November 27, 2008, hearing transcript at 101-03.

- 7 -

on this issue to the extent such testimony is not cumulative to evidence already in the record. See, e.g., Mr. Drought's testimony: November 27, 2008, Transcript at 165-166.

It appears that much of the other proposed rebuttal testimony listed in the plaintiff's chart relies on the new evidence, although not identified as such. Specifically, this evidence is Shaw Environmental's February 11, 2008, groundwater tests results from the excavation sump and MW-1; Shaw Environmental's February 12, 2008 sub-slab samples and the indoor air sample by SUMMA canister and Shaw Environmental's March 1-2, 2008, indoor air sample taken by SUMMA canister for a 24–hour period.

Mr. Drought's proposed rebuttal to Dr. Singh's testimony that the Grace site is now "clean" is based on the February 11, 2008, groundwater test results. See Plaintiff's Memorandum Regarding Plaintiff's Proposed Rebuttal Witnesses [Plaintiff's Initial Memorandum] at 2-3. Mr. Drought's proposed rebuttal of Dr. Singh and Mr Tierney's testimony that contamination under the plaintiff's building is getting worse is grounded on the February 12, 2008, and March 1-2, 2008, test results. Mr. Drought's proposed testimony that the breathable air in the plaintiff's basement is not "safe," which would be offered to rebut Mr. Tuomanen's testimony, is based on the March 1-2, 2008, indoor air samples taken by use of a SUMMA canister on March 1-2, 2008. See Plaintiff's Initial Memorandum at 4 ("Mr. Drought's testimony [about the March 1-2, 2008, indoor air samples] rebuts both Ragu Singh's Sampling results and Mr. Toumanen's testimony that the breathable air in the basement is 'safe.'") The testimony of Mr. Drought (or Dr. Hogan) that there is a connection between the sub-slab and indoor air at the Grace site, despite Mr. Toumanen's testimony of a "disconnect" between what is under the floor and in the basement air, is based on the February 12, 2008,

sub samples of the soil gas vapors and the indoor air sample taken by using a SUMMA canister. See Plaintiff's Initial Memorandum at 3-4.

The plaintiff's proposed rebuttal testimony of Dr. Hogan to counter Mr. Tuomanen's testimony that there was no reason to immediately remediate because there were only trace levels of volatile organic compounds (VOC) in the church's basement air is based on the indoor air sampling conducted on March 1, 2008 and March 2, 2008, which showed "elevated levels of volatile organic compounds ('VOC') in the basement classroom emanating from a crack in the basement floor." (Plaintiff's Initial Memorandum at 5). Similarly, Dr. Hogans' proposed testimony that "[f]loor joints and cracks are completed vapor intrusion pathways from the sub-slab to the interior breathing zone of the students which expose students to petroleum hydrocarbons" is based on February 12, 2008, monitoring and a floor crack found in the floor near the west wall of the building. (Plaintiff's Reply at 3); see also, Plaintiff's Initial Memorandum at 5. In its initial memorandum, the plaintiff explains: "This floor crack is a completed pathway between the sub-slab and the student's breathing zone." (Plaintiff's Initial Memorandum at 6). According to the plaintiff, Dr. Hogan would testify that the "[t]est results from the basement floor crack near the west wall of the Grace building are evidence that there is a completed vapor intrusion pathway from the sub-slab to the interior breathing zone of the students' which is exposing students to petroleum hydrocarbons." (Plaintiff's Initial Memorandum at 6). Such testimony is based on new tests and monitoring that were done after most of the defendants' experts had completed their testimony. The plaintiff also proposed to offer testimony by Dr. Drought about the focus of the "investigation" and what the "investigation" supports. It is not clear what "investigation" Mr Drought is referencing in his

proposed rebuttal to testimony of Mr. Tierney, nor whether Mr. Drought's testimony is based on the "new" evidence.  See Plaintiff's Reply at 4.

Although the plaintiff states it will not be relying on "new" evidence, as noted, it appears that much of the proposed testimony as set forth in plaintiff's chart is based on the testing, monitoring and sampling done in February and March 2008.   This is new evidence.

This is a preliminary injunction proceeding which has been pending since the plaintiff filed its motion on September 20, 2007, not a trial on the merits.  The court has held six days of hearings since the motion was filed.  At some time, this preliminary proceeding must come to an end.  To admit "new" evidence at this stage as the plaintiff requested would further extend resolution of the preliminary injunction motion.  The defendants almost certainly would request additional time to review this new evidence and, in all likelihood, would want to conduct further investigation on the new issues raised.  A preliminary injunction is designed to address some imminent harm.  To extend this process further would not serve that purpose.  Thus, to the extent any rebuttal testimony is based on "new" testing, investigation and other evidence, it will not be permitted.  Similarly, to the extent any evidence is cumulative to evidence already in the record, it will not be allowed.

Finally, regarding the plaintiff's request for an opportunity to make an offer of proof on the record as to the witness' testimony about the test results, the plaintiff's memoranda and proposed exhibits are detailed and provide sufficient information about such proposed testimony. Therefore, no further offer of proof is necessary. Accordingly, the plaintiff's request to make an offer of proof with respect to those exhibits will be denied.

In sum, based on the parties' submissions, with certain exceptions, the court basically lacks sufficient information to ascertain what evidence is actually cumulative or whether

- 10 -

proposed testimony is clearly rebuttal testimony. To the extent any of the proffered rebuttal testimony is cumulative of evidence already in the record or is based on new evidence such testimony will not be permitted.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion to add PSK Investments LLC as a defendant be and hereby is **denied** without prejudice. (Docket #61). The plaintiff may renew the motion at its discretion simply by advising the court and the defendants in writing that it wants to do so. Since briefing on the motion has been completed by the parties, no further briefing is necessary.

**IT IS FURTHER ORDERED** that the plaintiff's motion seeking the court's permission to offer testimony from three rebuttal witnesses be and hereby is **granted in part** and **denied in part** as stated herein (Docket #76).

**IT IS ALSO ORDERED** that the parties shall appear for a telephone conference on **June 17, 2008**, at **2:00 p.m.** to schedule future proceedings. The court will initiate the conference call.

Dated at Milwaukee, Wisconsin this 12th day of June, 2008.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge